IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CODY ENIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:12-CV-0295-D |
| VS. | § | |
| | § | |
| BANK OF AMERICA, N.A., AS | § | |
| SUCCESSOR BY MERGER TO BAC | § | |
| HOME LOANS SERVICING, L.P., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Bank of America, N.A. ("BOA") moves for summary judgment dismissing

the claims of plaintiff Cody Enis ("Enis") for unreasonable collection efforts and violations

of the Texas Debt Collection Practices Act ("TDCPA"). For the reasons that follow, the

court grants BOA's motion in part and denies it in part.

I

Enis purchased residential property in 2007, executing a promissory note in favor of

BSM Financial, L.P. d/b/a Banksource Mortgage ("BSM").[1] The deed of trust named

Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. Beginning in

2009, Enis struggled to make his note payments, but he avers that he entered into a modified

---

[1]The court recounts the evidence in favor of Enis as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

payment plan with Taylor, Bean & Whitaker Mortgage Co. ("TB&W"), the company then servicing the note. Enis maintains that he made monthly payments according to that agreement.

In August 2009 Enis learned that TB&W had gone into receivership, and he did not know where to send his monthly payments. He received notice that BAC Home Loans Servicing, L.P. ("BAC") was now servicing the note. Because BAC is now a subsidiary of BOA, the court will refer to BAC's alleged conduct as if it were BOA's for purposes of deciding this motion. *See Enis v. Bank of Am., N.A.*, 2012 WL 4741073, at *1 n.2 (N.D. Tex. Oct. 3, 2012) (Fitzwater, C.J.) ("*Enis I*").

In October 2009 BOA notified Enis by letter that he was four months behind on his payments. Enis maintains that this notice was incorrect based on his arrangement with TB&W. Enis submitted bank statements showing payments to TB&W. According to Enis, BOA refused to accept this as sufficient proof of payment and still has not credited him with payments he made to TB&W. Based on its review of its records, BOA maintains that all of Enis' payments to TB&W have been fully applied to his mortgage.

In October 2009 Enis applied for loan modification, which was denied. BOA states that it was denied because Enis' income was too low. Enis asserts that BOA denied his application because he failed to submit the requested documents. He alleges that, after BOA informed him that it had not received his documents, he again submitted the requested documents and received confirmation from the shipping company that BOA had signed for the package. But when Enis called BOA to verify its receipt of the paperwork, he was

informed that BOA had only received a single sheet of paper, and therefore that his loan

modification application would be denied.

From February 2010 to November 2011, BOA attempted to collect Enis' delinquent

loan.  During this period, BOA placed 110 telephone calls to Enis, of which he answered 31.

According to BOA, its records show that no calls were placed after 7:00 p.m, but Enis avers

that he received calls as early as 8:00 a.m. and as late as 11:00 p.m.[2]  It is undisputed that

BOA did not threaten Enis or his family with violence or bodily harm.

BOA states that Enis has paid his mortgage through May 2010.  In October 2010 Enis

was notified that, if he failed to bring his mortgage current by November 2010, his mortgage

would be accelerated in full and foreclosure proceedings would begin.

Enis filed suit in state court to prevent foreclosure and to recover damages from BOA

on various claims.  BOA removed the case to this court.  The court has previously addressed

BOA's motions to dismiss under Fed. R. Civ. P. 12(b)(6) and for judgment on the pleadings

under Rule 12(c).  Enis' remaining claims are for unreasonable collection efforts, violations

of the TDCPA, and violations of the Real Estate Settlement Procedures Act ("RESPA").  *See*

---

[2]Enis also infers from BOA's telephone records that he received a collection call at 6:04 a.m on January 20, 2012.  *See* P. App. 122; P. Br. 16.  A reasonable jury could not, however, draw the same inference.  The telephone records do not specify whether the time of the call was 6:04 a.m. or 6:04 p.m.  *See* P. App. 122.  A reasonable jury could not infer that the call was placed at 6:04 a.m. because the three preceding calls reflect times of 1:08, 4:38, and 5:05, and Enis does not assert that he received calls at 1:08 a.m., 4:38 a.m., or 5:05 a.m.  *See id.*  Furthermore, BOA avers (and Enis does not dispute) that the telephone calls for collection purposes ended in November 2011—two months before the supposed 6:04 a.m. collection call.  *See* D. App. 2.

*Enis I*, 2012 WL 4741073, at \*5-6 (denying motion to dismiss TDCPA and unreasonable collection efforts claims); *Enis v. Bank of Am., N.A.*, 2013 WL 840696, at \*3 (N.D. Tex. Mar. 7, 2013) (Fitzwater, C.J.) ("*Enis II*") (denying motion for judgment on pleadings on RESPA claim).  BOA moves for summary judgment dismissing Enis' claims for unreasonable collection efforts and violations of the TDCPA.[3]

II

Because BOA is moving for summary judgment on claims for which Enis will bear the burden of proof at trial, BOA can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support Enis' claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once BOA does so, Enis must go beyond his pleadings and designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Enis' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Enis' failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citing *Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at \*4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.)).  Summary judgment is mandatory if Enis fails to meet this burden.  *Little*, 37 F.3d at 1076.

---

[3]Enis' RESPA claim is not at issue.  BOA filed its motion for summary judgment before the court decided BOA's Rule 12(c) motion for judgment on the pleadings, which addressed the RESPA claim.

III

The court first turns to Enis' claim of unreasonable collection efforts.

A

The intentional tort claim of unreasonable collection efforts "requires a showing that debt collection efforts 'amount[ed] to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'" *Enis I*, 2012 WL 4741073, at *5 (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868-69 (Tex. App. 2008, no pet.)); *see also Hidden Forest Homeowners Ass'n v. Hern*, 2011 WL 6089881, at *4 (Tex. App. Dec. 7, 2011) (mem. op.) (same).[4]

Although Texas courts have not clearly defined the elements of this tort and have stated that "the conduct deemed to constitute an unreasonable collection effort varies from case to case," *see EMC Mortgage*, 252 S.W.3d at 868, federal district courts have enforced

---

[4]Enis maintains that the court should apply a negligence standard, and he defines the tort as "efforts which a person of ordinary prudence in the exercise of ordinary care on his part would not have exercised under the same or similar circumstances." P. Br. 16-17 (quoting *Emp. Fin. Co. v. Lathram*, 363 S.W.2d 899, 901 (Tex. Civ. App. 1962), *aff'd in part, rev'd in part on other grounds*, 369 S.W.2d 927 (Tex. 1963)). But as the Fifth Circuit has noted, the *Lathram* "ordinary care" standard "has largely been disavowed by Texas courts." *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 204-05 (5th Cir. 2012). And district courts in this circuit have consistently rejected the *Lathram* standard in favor of the definition in *EMC Mortgage*. *See, e.g., Berry v. Fed. Nat'l Mortg. Ass'n*, 2013 WL 1294008, at *12 (Mar. 29, 2013) (Lindsay, J.); *Kopin v. Wells Fargo Bank, N.A.*, 2013 WL 74601, at *6 & n.45 (E.D. Tex. Jan. 4, 2013); *Swim v. Bank of Am., N.A.*, 2012 WL 170758, at *7 (N.D. Tex. Jan. 20, 2012) (Lynn, J.); *Watson v. Citimortgage, Inc.*, 814 F.Supp.2d 726, 734 (E.D. Tex. 2011).

the *EMC Mortgage* definition[5] literally and have required that plaintiffs show that the willful course of harassment was intended to inflict both mental anguish *and* bodily harm. *See, e.g., Myers v. Bank of Am., N.A.*, 2012 WL 1107687, at *4 (E.D. Tex. Mar. 31, 2012) (dismissing claim because there was "no allegation that the Defendant's collection efforts were intended to inflict bodily harm"); *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 747 F.Supp.2d 794, 818 (S.D. Tex. 2010) (granting summary judgment because, *inter alia*, no showing of intent to inflict bodily harm); *see also Moye v. Fed. Home Loan Mortg. Corp.*, 2012 WL 3048858, at *5 (S.D. Tex. July 25, 2012) (same, in context of motion to dismiss).  Although the Fifth Circuit has not addressed the precise question whether a plaintiff must show an intent to inflict bodily harm, it has concluded that a district court did not err in adopting the *EMC Mortgage* standard.  *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 204-05 (5th Cir. 2012).

Courts generally limit this tort to actual collection efforts (such as telephone calls that seek to collect on a debt) as opposed to communications or conduct concerning other aspects of the debtor's loan (such as actions concerning loan modification).  *See Enis I*, 2012 WL 4741073, at *5 & n.7; *see also Montgomery Ward & Co. v. Brewer*, 416 S.W.2d 837, 844 (Tex. Civ. App. 1967, writ ref'd n.r.e.) (in considering what constitutes collection efforts, distinguishing between communications to debtor and mistakes in handling account).

---

[5]Although *EMC Mortgage* contains the adopted definition of unreasonable collection efforts, the court of appeals did not address whether this definition is correct.  *See EMC Mortg.*, 252 S.W.3d at 868-69.  The court instead based its ruling on a different definition that was used in the jury charge and to which neither party had objected.  *See id.* at 869.

- 6 -

B

Because this tort is limited to collection efforts, much of the evidence on which Enis relies does not support his claim.  He maintains that BOA undertook unreasonable collection efforts by sending a letter that incorrectly stated he was four months behind in his payments; refusing to acknowledge his payment plan with TB&W; promising loan modification and to refrain from foreclosing; denying loan modification; falsely representing that it did not receive his loan modification documents; failing to provide information in response to his RESPA request; and harassing him with telephone calls.  As this court noted in *Enis I*, only the telephone calls qualify as collection efforts.  *See Enis I*, 2012 WL 4741073, at *5 n.7 (holding that the following factual allegations are not actionable unreasonable collection efforts: refusing to acknowledge payments made; promising to modify loan and not to foreclose; and failing to provide an accounting); *see also Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 636 (N.D. Tex. 2010) (Lynn, J.) (finding no authority for proposition that failure to provide information is collection effort); *Richardson v. Wells Fargo Bank, N.A.*, 873 F.Supp.2d 800, 814 (N.D. Tex. 2012) (McBryde, J.) (holding that the following did not constitute collection efforts: intentionally misleading and delaying plaintiff to point of foreclosure; assessing late charges, penalties, and other additional charges; and improperly placing property in foreclosure); *Rhodes v. Wells Fargo Bank, N.A.*, 2012 WL 5363424, at *28 (N.D. Tex. Oct. 31, 2012) (Lindsay, J.) (collecting cases).

Making harassing telephone calls to a debtor can constitute unreasonable collection efforts.  *See Enis I*, 2012 WL 4741073, at *5 (citing *Bray v. Cadle Co.*, 2010 WL 4053794,

at *18-19 (S.D. Tex. Oct. 14, 2010)).  Such claims have succeeded when collection agents

called a debtor five times in one night and once threatened personal violence.  *See Pioneer*

*Fin. & Thrift Corp. v. Adams*, 426 S.W.2d 317, 319 (Tex. Civ. App. 1968, writ ref'd n.r.e.).

As evidence that BOA's telephone calls were a willful course of harassment intended to

inflict mental anguish and bodily harm, Enis avers that "[BOA] called me every hour from

around 8 a.m. until as late as 11:00 p.m. harassing me about my mortgage.  I repeatedly asked

them not to call more than once a day, but they continued to call."  P. App. 4-5.[6]  BOA has

introduced evidence that it placed 110 telephone calls to Enis between February 26, 2010 and

November 10, 2011, of which Enis answered 31.  It is undisputed that BOA did not threaten

Enis or his family with violence or bodily harm.

 Although the evidence of the frequency of the calls and the times they were placed

would, in combination, enable a reasonable jury to find that these collection efforts were

willfully harassing and intended to inflict mental anguish, Enis has failed to adduce any

evidence that BOA intended to inflict bodily harm.  Enis does not specify the content of the

telephone calls and has not proffered any evidence that BOA threatened violence or

otherwise attempted to inflict bodily harm.  Without such a showing—which is necessary to

satisfy the prevailing legal standard for a claim of unreasonable collection efforts—BOA is

---

 [6]According to BOA, it never attempted to contact Enis after 7:00 p.m.  But in deciding
BOA's summary judgment motion, the court must assume that Enis' conflicting averment
is true.  And although there is no evidence to corroborate Enis' assertion that he requested
that BOA not call him *multiple* times in a day—because the evidence merely shows that he
requested that BOA not call *again*, *see* P. App. 123—the court must draw all reasonable
inferences in favor of Enis.

entitled to summary judgment on this claim. Accordingly, the court grants summary judgment dismissing Enis' claim for unreasonable collection efforts.[7]

## IV

The court now considers Enis' claims under the TDCPA.

## A

Enis alleges that BOA violated Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006), which prohibits threatening to take action prohibited by law.[8] Section 392.301(b)(3) specifies that it "does not prevent a debt collector from . . . exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Enis maintains that BOA's attempt to foreclose on his property was prohibited by law because BOA failed to comply with the deed of trust. Enis does not specify which provisions in the deed of trust were allegedly violated. He instead merely asserts that BOA refused to accept his proof of payment or recognize his TB&W payment plan, without explaining the relevance of this information. He also posits that BOA coerced him into not taking action to prevent foreclosure by telling him it would not foreclose during

---

[7]The court recognizes that it denied BOA's motion to dismiss this claim. *See Enis I,* 2012 WL 4741073, at *5. But "summary judgment is governed by a higher standard than the one that applies when determining the plausibility of a claim at the Rule 12(b)(6) stage." *SEC v. Cuban,* 2013 WL 791405, at *5 (N.D. Tex. Mar. 5, 2013) (Fitzwater, C.J.). Enis has failed to adduce the factual support necessary to enable a reasonable jury to find that BOA's telephone calls were intended to inflict bodily harm.

[8]Although the court dismissed this claim in *Enis I*, BOA moves for summary judgment because the court granted Enis leave to replead and he reasserted the claim. *See Enis I*, 2012 WL 4741073, at *5; 2d Am. Compl. ¶ 42.

the pendency of the loan modification process.[9]

BOA is entitled to summary judgment on this claim because Enis has failed to adduce any evidence that would enable a reasonable jury to find that BOA threatened to take action prohibited by law.  Section 392.301(b)(3) exempts from § 392.301(a)(8) the exercise of a contractual right to foreclose.  As the court held in *Enis I*, BOA did not waive its contractual right to foreclose upon default.  *See Enis I*, 2012 WL 4741073, at *2.  And Enis does not dispute that he is now in default.  As for Enis' coercion argument, he does not explain how promising not to foreclose is coercive.  Moreover, Enis' argument lacks a factual basis because, as the court explained in *Enis I* and the summary judgment record reflects, BOA did not attempt to foreclose until after denying loan modification.  Accordingly, a reasonable jury could not find that BOA violated an agreement not to foreclose *during the pendency* of the loan modification process.  *See id.* at *3.

Furthermore, an oral agreement to modify the loan would be unenforceable under the statute of frauds.  Enis does not contest that the statute of frauds applies to BOA's alleged promise to modify his loan and not to foreclose; he posits, instead, that two exceptions to the statute of frauds apply: promissory estoppel and partial performance.

To establish promissory estoppel, Enis must prove that BOA made a promise on which he substantially relied to his detriment, and that his reliance was foreseeable to BOA. *See, e.g., McDonald v. Deutsche Bank Nat'l Trust Co.*, 2012 WL 2122168, at *5 (N.D. Tex.

---

[9]In his affidavit, Enis cites a letter from BOA and asserts that it states that BOA would not foreclose.  The letter itself does not support this characterization.  *See* P. App. 94.

June 11, 2012) (Boyle, J.) (citing *Lozada v. Farrall & Blackwell Agency, Inc.*, 323 S.W.3d

278, 291 (Tex. App. 2010, no pet.)).  In the statute of frauds context,  Enis must also show

that BOA promised to sign a written agreement that complies with the statute of frauds.  *See*

*id.* (citing *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App. 2001, no

pet.)); *see also Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982).  Assuming *arguendo* that

a reasonable jury could find in Enis' favor concerning the general elements of promissory

estoppel, he has failed to offer any evidence, or even to assert, that BOA promised to sign

a written agreement stating that it would modify his loan and not foreclose.[10]

Enis has also failed to create a genuine issue of material fact as to whether the partial

performance exception to the statute of frauds applies.  This exception allows partially

performed contracts to be enforced in equity "if denying enforcement would itself amount

to a fraud."  *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 554 (Tex. App. 2009, pet.

dism'd w.o.j.).  As the *Gaubert* court explained:

> The actions asserted to constitute partial performance must be
> "unequivocally referable" to the alleged oral agreement and
> corroborate the existence of that agreement; they "must be such
> as could have been done with no other design than to fulfill the
> particular agreement sought to be enforced; otherwise, they do
> not tend to prove the existence of the parol agreement relied
> upon by the plaintiff."

*Id.* (citing *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App. 2002, pet.

---

[10]As support for his estoppel argument, Enis appears to contend that BOA waived its
right to foreclose.  For the same reasons that the court rejected Enis' waiver argument in *Enis
I*, 2012 WL 4741073, at *2, it does so here as well.

denied)). Enis only points to evidence that he repeatedly applied for a loan. A reasonable jury could not find on this basis that there was an agreement to modify his loan and not to foreclose. Merely applying for loan modification does not reasonably support the finding that BOA made such promises.

In sum, the statute of frauds applies to render BOA's alleged oral agreement unenforceable.

B

Enis also asserts a TDCPA claim based on BOA's repeated collection calls. Tex. Fin. Code Ann. § 392.302(4) prohibits a debt collector from harassing a person by "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number." Although § 392.302(4) is similar to an unreasonable collection efforts claim in that it requires proof of intent to harass, it does not require proof of intent to inflict mental anguish and bodily harm. *See supra* § III.

Because there are few cases applying § 392.302(4) or prescribing what evidence demonstrates an intent to harass, the court also looks to cases interpreting the similar provision of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d(5). Section 1692d(5) prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Under this statute, intent to harass "may be inferred from the frequency, pattern, or substance of the telephone calls that [the debtor] received from the debt collector or the place to which the calls were made." *Young v. Asset*

*Acceptance, LLC*, 2011 WL 1766058, at *3 (N.D. Tex. May 10, 2011) (Ramirez, J.); *see also Pugliese v. Prof'l Recovery Serv., Inc.*, 2010 WL 2632562, at *9 (E.D. Mich. June 29, 2010) (considering "volume of calls . . . along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct"). "There is no bright line rule as to the specific amount or pattern of calls sufficient to raise a fact issue regarding the intent to annoy, abuse, or harass; courts simply disagree on the amount or pattern of calls needed to raise a triable fact issue." *Young*, 2011 WL 1766058, at *3. While such a claim under the TDCPA or FDCPA is fact intensive, *see Smith v. ProCollect, Inc.*, 2011 WL 1375667, at *6 (E.D. Tex. Apr. 12, 2011), to survive summary judgment a plaintiff of course must still adduce evidence sufficient for a reasonable jury to find an intent to harass.

Supporting a finding of intent to harass is the evidence that Enis requested that BOA not call him multiple times per day but that it continued to do so, that BOA called him repeatedly (110 times in 21 months, during which he answered the telephone 31 times), and that it called as late as 11:00 p.m. This evidence is sufficient in combination to enable a reasonable jury to find that the telephone calls were made with an intent to harass, in violation of § 392.302(4). *See Young*, 2011 WL 1766058, at *3 (denying summary judgment on FDCPA § 1692d(5) claim where agent called three times per day on at least two occasions, called 33 times over a period of 73 days, and called before 8:00 a.m. and after 9:00 p.m.).

Although the court denies summary judgment in this respect, it notes that the question is a close one. Enis has failed to specify how many times BOA telephoned him at an

unusually late hour, how many times per day BOA called, or whether the caller's tone or comments were harassing or offensive.  A jury may well find from its assessment of the evidence at trial that BOA's conduct was closer to ordinary collection efforts than to intentional harassment.  *Cf. Adamcik v. Credit Control Servs., Inc.*, 832 F.Supp.2d 744, 747 (W.D. Tex. 2011) (upholding jury finding of intent to harass under FDCPA where collection agency called debtor at least 134 times in 40-day period, phoned both of her telephones simultaneously, violated company policy about waiting 10 days to call again if debtor requested that calls stop, and threateningly implied that high volume of calls would not stop until debt was paid); *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 78, 84-85 & n.8 (Tex. App. 1998, pet. denied) (noting, in addressing invasion of privacy claim, that collection agents' actions would have also violated § 392.302(4), where agents used abusive and vulgar language, called debtor at work despite requests not to do so, and called her home at 6:30 a.m. on some weekends and after 11:00 p.m. on weekdays).

## C

The court also denies summary judgment as to Enis' claim under Tex. Fin. Code Ann. § 392.303(a)(2), which prohibits unfair means of debt collection, such as charging a fee or collecting interest that is not expressly authorized by the loan agreement or legally chargeable to the debtor.

Enis avers that BOA charged fees and interest on amounts he had already paid to TB&W, which he supports by including bank statements that show payments to TB&W from January 2008 through December 2009.  Although BOA avers that it has reviewed its records

- 14 -

and determined that "all payments Plaintiff made to [TB&W] were fully and properly applied to Plaintiff's mortgage," D. App. 2, BOA fails to include supporting evidence in the record to eliminate the fact issue created by Enis' averments and bank statements.  Therefore, BOA is not entitled to summary judgment dismissing this claim.

## D

For similar reasons, the court denies BOA's summary judgment motion regarding Enis' claim under Tex. Fin. Code Ann. § 392.304(a)(8).

Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."  For example, a balance statement misstating the amount owed on a debt constitutes actionable misrepresentation under § 392.304(a)(8).  *See Narvaez*, 757 F.Supp.2d at 632.  Because there is a genuine issue of material fact as to whether BOA properly credited the payments made to TB&W, *see supra* § IV(C), a reasonable jury could also find that BOA misrepresented the amount of debt still owed.[11] Enis avers, for instance, that BOA incorrectly stated in an October 2009 letter that he was four months behind in payment.  *See Gatling v. CitiMortgage, Inc.*, 2012 WL 3756581, at *12 (S.D. Tex. Aug. 28, 2012) (denying summary judgment where fact question existed

---

[11]Enis does not explicitly argue that BOA misrepresented the amount owed.  Despite this failure, the court declines to grant summary judgment on this component of his claim. Because Enis argues, and has adduced evidence, that BOA charged him for payments he already made to TB&W, in violation of § 392.303(a)(2), *see supra* § IV(C), it follows that there is also a fact issue as to whether BOA misrepresented the amount of his debt.

regarding whether bank, in its notice of acceleration, misrepresented amount of debt).

E

To support his claim under Tex. Fin. Code Ann. § 392.304(a)(19)—a catch-all provision that prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer"—Enis contends that BOA misled him into believing he was approved for a loan modification and that it would not foreclose.[12]  BOA maintains that this claim fails because the statute of frauds renders unenforceable the alleged promises to modify the loan and not to foreclose. *See, e.g., Kruse v. Bank of N.Y. Mellon*, ___ F.Supp.2d ___, 2013 WL 1294088, at *3-4 (N.D. Tex. Apr. 1, 2013) (Boyle, J.) (holding that statute of frauds barred mortgagor's § 392.304(a)(19) misrepresentation claim, where claim only sought to recover damages for mortgagee's failure to perform oral promise to postpone foreclosure, and plaintiffs did not allege misrepresentation or damages independent of unenforceable agreement).  Enis does not contest that the statute of frauds bars this claim, but instead posits that two exceptions apply: promissory estoppel and partial performance.  Because the court has concluded that Enis' arguments for exceptions to the statute of frauds fail, *see supra* § IV(A), BOA is

---

[12]Enis does not argue that BOA committed any other misrepresentation.  In *Enis I* the court declined to dismiss Enis' § 392.304(a)(19) claim because Enis adequately pleaded that BOA misrepresented not receiving loan modification documents that Enis submitted.  *See Enis I*, 2012 WL 4741073, at *6.  In responding to BOA's summary judgment motion, however, although Enis states facts about BOA's representations that he had failed to submit the required documents, he does not raise the argument that BOA violated § 392.304(a)(19) by making false representations relating to submitted loan modification documents.

entitled to summary judgment on the § 392.304(a)(19) claim.[13]

F

Finally, the court considers whether BOA is entitled to summary judgment dismissing Enis' claim that BOA is not authorized to collect his indebtedness because it has not obtained a surety bond, as required under Tex. Fin. Code Ann. § 392.101(a).

Section 392.101 prohibits a "third-party debt collector . . . [from] engag[ing] in debt collection" unless it has obtained a surety bond and filed a copy of the bond with the Secretary of State. To define "third-party debt collector," the Texas statute largely adopts the definition of "debt collector" from the FDCPA, 15 U.S.C. § 1692a(6). *See* Tex. Fin. Code Ann. § 392.001(7) (West 2006).[14] Section 1692a(6) defines "debt collector," in

---

[13]Even if an exception to the statute of frauds did apply, it is questionable whether Enis could recover damages under the TDCPA for BOA's denying loan modification and seeking foreclosure. The economic loss rule, also called the independent injury rule, apparently would bar Enis' claim because it is "premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender." *See Caldwell v. Flagstar Bank, FSB*, 2013 WL 705110, at *12 (N.D. Tex. Feb. 4, 2013) (Horan, J.), *rec. adopted*, 2013 WL 705876 (N.D. Tex. Feb. 26, 2013) (Kinkeade, J.) (applying economic loss rule to dismiss claims under §§ 392.204(a)(8) & (19)). Enis does not assert that he suffered injury apart from the economic loss of being denied modification and being foreclosed upon. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991) ("When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone." (citation omitted)).

[14]Section 392.001(7) provides:

> "Third-party debt collector" means a debt collector, as defined by 15 U.S.C. Section 1692a(6), but does not include an attorney collecting a debt as an attorney on behalf of and in the name of a client unless the attorney has nonattorney employees who:

- 17 -

relevant part, as any person whose business' principal purpose is collecting debts, or "who

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted

to be owed or due another."[15]   This definition distinguishes between collecting a debt and

enforcing a security interest by stating that, for purposes of § 1692f(6), the term "debt

collector" also includes any person whose business' principal purpose is the enforcement of

security interests. 15 U.S.C. § 1692a(6); *Brown v. Morris*, 243 Fed. Appx. 31, 35 (5th Cir.

2007) (per curiam) (explaining "§ 1692a(6)'s distinction between debt collection and

---

> (A)  are regularly engaged to solicit debts for collection; or
>
> (B)  regularly make contact with debtors for the purpose of collection or adjustment of debts.

[15]In relevant part, 15 U.S.C. § 1692a(6) defines "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . .  For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.  The term does not include—. . .
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

enforcement of a security interest" (citing *Kaltenbach v. Richards*, 464 F.3d 524, 527 n.3 (5th Cir. 2006)).

Because of the statute's distinction between collecting a debt and enforcing a security interest, an entity's foreclosure activities do not count as debt collection for the purposes of determining whether it is a "debt collector" under § 1692a(6)—i.e., whether the entity's principal purpose is collecting debts or whether it regularly collects debts owed to another. *See Brown*, 243 Fed. Appx. at 35 (holding that person was not *per se* debt collector under FDCPA where he engaged primarily in nonjudicial foreclosures). But an entity can still qualify as a "debt collector" under the FDCPA when engaging in foreclosure activities if, through its other activities, it satisfies the statutory definition. *See Kaltenbach*, 464 F.3d at 529 ("We therefore hold that a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests.").

It is necessary to determine whether an entity conducting a foreclosure otherwise satisfies the FDCPA definition of "debt collector" because, under Tex. Fin. Code Ann. § 392.101, an FDCPA "debt collector"—i.e., a TDCPA "third-party debt collector"—must obtain a surety bond. Section 392.101 prohibits engaging in "debt collection" without obtaining and filing a surety bond, and the term "debt collection" under the TDCPA includes foreclosure actions. *See Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 731-32 (N.D. Tex. 2011) (Fitzwater, C.J.) (holding, as *Erie*-guess, that "debt collection" under TDCPA includes foreclosure actions). In sum, if BOA is an FDCPA "debt

collector"—meaning its principal purpose is collecting debts or it regularly collects debts owed to another—then it cannot foreclose on Enis' property without obtaining and filing a surety bond.[16]

BOA maintains that the bond requirement of § 392.101 does not apply because the FDCPA's definition of "debt collector" does not include the act of foreclosure.[17]  Although BOA's position is not completely accurate,[18] Enis has adduced no evidence that would enable a reasonable jury to find that BOA satisfies the FDCPA's definition of "debt collector." Accordingly, BOA is entitled to summary judgment dismissing Enis' claim under § 392.101.

---

[16]In *Enis I* the court held that "[t]he amended complaint alleges that BOA holds the deed of trust and services the note, but that BOA does not own the note.  Therefore, BOA is acting as a third-party debt collector and must obtain a surety bond."  *Enis I*, 2012 WL 4741073, at *7.  With the benefit of current briefing, the court questions the accuracy of that analysis and withdraws it.  In addition, *Enis I* was based on the allegations of Enis' amended complaint, not the summary judgment evidence.  As noted, *see supra* note 7, "summary judgment is governed by a higher standard than the one that applies when determining the plausibility of a claim at the Rule 12(b)(6) stage."

[17]BOA also relies on evidence from the Secretary of State's debt collector registry, which it contends establishes that it was bonded.  The court need not consider this evidence.

[18]As explained above, if BOA were a "debt collector" under the FDCPA, it would be covered by § 392.101 even while engaging in foreclosure actions.

\*   \*   \*

For the reasons explained, BOA's motion for summary judgment is granted in part and denied in part.

**SO ORDERED.**

April 22, 2013.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE